Mr. Justice Hagner
delivered the opinion of the court.
This is an action for breach of promise of marriage. The verdict below was for the defendant, and the case comes here upon eighteen bills of exceptions.
The first of these embodies the only statement of the evidence to be found in the record. It sets forth that at the trial, “ after the plaintiff had testified in support of the issue on her part, and been cross-examined in relation to interviews had with A. G. Riddle, and statements alleged to have been made to him concerning her physical condition, as to being pregnant or otherwise, and as to receiving money from the defendant through the said Riddle, and her receipts for the same, and other matters, the defendant, to sustain the issue upon his part joined, called and had sworn the said Riddle; ” and it then proceeds to state at length the substance of Mr. Riddle’s evidence, at the conclusion of which the exception proceeds : “ To all of which testimony, as well as to the swearing of the said Riddle as a witness, the plaintiff, through her attorney, then and there objected, on the ground that said Riddle had been counsel for the plaintiff when the aforesaid communications and statements were made to him by the plaintiff, and that by reason thereof, all of said communications and statements were privileged, and could not be testified to by said Riddle in this case.”
The exception presents for the consideration of the court the proper application of the rule of law, w’hich forbids a legal adviser to disclose any communications made to him by a client, in virtue of his professional employment, against the client’s' consent.
The just application of this rule, from a very early period in the history of the law, has been upheld by the courts, as of supreme importance in the administration of justice ; and it has wisely been left untouched by any of the statutes in modern times, which have so liberally removed restrictions from the rules of evidence. The Supreme Court, in the case of Conn. Mutual Life Ins. Co. vs. Schaeffer, 4 Otto, 458 announces, we believe, the general sentiment of the profession, when it expresses the hope that it will remain undisturbed by any future legislation. For, as the court in that *239 case proceeds to say : “ The protection of confidential communications made to professional advisers, is dictatéd by a wise and liberal policy. If a person cannot consult his legal adviser without being liable to have the interview made public the next day, by an examination enforced by the courts, the Jaw would be little short of despotic. It would be a prohibition upon professional advice and assistance.”
These wholesome precepts should be maintained inviolate in the interest, alike of the courts, its officers and the suitors, and we have no disposition to modify them in the slightest degree.
The general principles regulating the application of the rule seem to be well established. It is recognized by the courts, that the exclusion of evidence of professional communications as privileged, is founded upon the same great considerations of public policy, which forbid the revelation on the witness stand of secrets of state; of the proceedings in the grand jury room ; and of the confidential intercourse between husband and wife; that the privilege is not that of the professional man, but of his client, who may waive it or not as he pleases; that as an attorney may be held liable for want of proper care and diligence in the transaction of professional business, notwithstanding it was undertaken gratuitously (Williams, Ex’r of McLean, v. Higgins, 30 Md., 404.); in like manner, such communications from clients may bh privileged, altliough the counsel neither expects nor receives a fee ; that the protection given by the law to such communications is perpetual, and does not cease with the termination of the suit, nor is it affected by the party ceasing to employ the attorney and retaining another, nor by any other change of relation between them, nor by the death of the client; the. seal of the Jaw once fixed upon them remains forever, unless removed by the party himself in whose favor it was there placed.
It is further well settled that the communication, to be privileged, must appear to have been made to the counsel, attorney or solicitor, acting for the time being in the character of legal adviser. For the reason of the rule having *240 respect solely to the free and unembarrassed administration of justice, and to the security and enjoyment of civil rights, does not extend to things confidentially communicated to other persons, as physicians or ministers of religion, nor even to those which come to the knowledge of counsel when not standing in that relation to the party, and not made in faith of that relation. Nor will the communication be protected, unless it appears that at the time it was made he was acting as legal adviser upon the very matter to which the communication refers. 1 Greenl. Ev., secs. 239, 242, and notes.
The author, pursuing the subject in section 244, holds the following language as to the cases “ where the attorney must disclose” the communications had with a person consulting with him, which are sometimes called exceptions to the rule, although within and part of the rule itself:
“ These different exceptions are where the communication was made before the attorney was employed as such, or after his employment had ceased, or where, though consulted by a friend, because he was an attorney, yet he refused to act as such, and was, therefore, only applied to as a friend; or where there could not be said, in any correctness of speech, to be a communication at all. * * * In all such cases, it is plain that the attorney is not called upon to disclose matters which he can be said to have learned by communication with his client, or on his client’s behalf—matters which were so committed to him in his capacity of attorney, and which, in that capacity alone, he had come to know.”
Let us apply these principles to the facts disclosed in the exception under examination.
From the detailed statement of Mr. Eiddle’s evidence, it appears that the plaintiff:' at first approached him professedly “ in behalf of a lady friend,” and made sundry communications to him while pretending to speak for her friend ; that in his own language, “ he did not entertain her statement as an attorney, and informed her that the matter was a delicate and difficult one, and he did not know whether he could or would undertake to render her any assistance ; ” “ that he finally consented to write a letter to Senator Cameron ; ” *241 “ that from the time of writing the letter he became the representative of the plaintiff, and acted as her attorney until its termination by the settlement made and payment of the $1,000 to the plaintiff;” “that he represented her wholly for the purpose of procuring from Senator Cameron money; ” and the witness produced and proved the plaintiff’s signature to the three receipts for $1,000 collected by him from the defendant, as he alleged, without fee, or intention to charge one.
He further testified, in the language of the exception, “ that he really had no secrets from the plaintiff; that she did not desire him to withhold anything she stated from the defendant, but expressly authorized him (Riddle) to communicate to the defendant all she revealed or stated, or that had passed between them in their various interviews, and that acting according to her wish and by her authority, he did communicate to the defendant all her statements made to him (Riddle) ; that in fact all the statements with regard to her condition or alleged condition were communicated to him before he wrote his first letter to the defendant, and before his relation as attorney or counsel for the plaintiff existed; that he would not have said one word to the defendant in relation to the plaintiff’s communication to him had she not requested and directed him so to do ; and that his connection with the plaintiff ceased upon the payment of the $1,000 to her obtained from the defendant.”
This evidence appears to bring the case within the precise language of several of the exceptions or so-called qualifications of the rule as above given ; and there is not another word of evidence in the case to contradict it. The plaintiff’, in her evidence, so far as the exception shows, does not intimate that she consulted Mr. Riddle as an attorney. Indeed, we only learn from the record in the case that he is an attorney from his own statement. It is doubtless true, that in the absence of evidence to the contrary, any conference between a person and an attorney, upon such matters, would be presumed to be of a professional character. But such presumption, like all others, must yield to direct evidence to *242 the contrary. It would, of course, be competent for one to converse with an attorney simply as a friend. The party might himself request in advance that the interview' might be considered as non-professional; or the attorney might specially stipulate that he was not to be looked upon otherwise than as an advisory friend. And the same understanding might be established otherwise than by such explicit declarations from either side. Mr. Riddle positively states that such ivas the case with respect to all the interviews with the plaintiff, until he undertook to write to Mr. Cameron, and that all the communications he received from the plaintiff were prior to this, and before he agreed to act as attorney, and there is not a word of evidence in the record to the contrary.
Again, whatever communications he received from the plaintiff he declares w'ere made known to the defendant at the request of the plaintiff. In our opinion this may well be considered as a waiver by the plaintiff of the protection of the rule, even if the attorney had received the communications in professional confidence. In Blackburn vs. Crauford, 3 Wall., 194, the attorney who had drawn Cranford’s will ivas permitted to testify, in a contest between parties who the testator described in his will as his natural children, and his heirs-at-law, that the testator, when instructing him as to the preparation of the wall had impressed upon him particularly the fact of the illegitimacy of the children and the illicit character of his relations with their mother. The Supreme Court says : “ The client may waive the protection of the rule. The waiver may be expressed or implied. We think it as effectual here by implication as the most explicit language could have made it. It could have been no clearer if the client had expressly enjoined it upon the attorney to give this testimony whenever the truth of his testamentary declaration should be challenged by any of those of whom it related.”
So in the case at bar it may well be asked how it could be supposed that the plaintiff desired the seal of secresy to remain attached to statements which she herself had directed *243 the attorney to communicate to the very person who she alleged had wronged her, and who she could not believe would be desirous to withhold their circulation even to her injury ?
The authorities declare that the same principle that seals the lips of the attorney as a witness, protects the client also on the witness stand from testifying as to her communications to counsel. Hemmenway vs. Smith, 28 Vermont, 701. But the brief statement of her evidence in the exception, shows that the plaintiff, on cross-examination, voluntarily, and without objection from her counsel so far as the record informs us, testified “ in relation to interviews had with A. G. Riddle, and statements alleged to have been made by him concerning her physical condition, as to being pregnant or otherwise, and as to her receiving money from the defendant from the said Riddle, and her receipts to the same, and other matters." And it may well be argued that her failure to interpose the objection that all these matters involved professional confidences, must be considered as a waiver on her part of the right to object to the examination of Mr. Riddle, in reply, upon the same topics. Hannah K. Chase’s Case, 1 Bland, 222.
The fil’st ground of error specified in the exception is to the action of the court in allowing Mr. Riddle to be sworn at all. But since it is settled that an attorney may be examined as a witness in a cause to establish the existence of that relation between himself and a party (Chirac vs. Reinicker, 11 Wheaton, 294; 1 Greenl. Ev., sec. 245), it is difficult to see why he may not equally be sworn to disprove his employment as such ; and, therefore, there was no error in the action of the court in this particular.
It is furthermore well settled, that notwithstanding the existence of professional relations between the attorney and a party may be admitted, yet there are subjects, with respect to which no such rule of privilege exists. Thus an attorney may be compelled to testify “ as to the fact of his paying over to his client moneys collected for him ; the execution of a deed by his client wdiich he attested; a state- *244 meat made by him to the adverse party ; his client's handwriting,” &c. 1 Greenl. Ev., sec. 245. And counsel may be compelled to produce any paper that the client might be required to do. Andrews vs. R. R. Co., 14 Ind., 169; Durkee vs. Leland, 4 Vt., 612. So, testimony of a lawyer that he brought suit fora certain firm, recovered judgment, collected the money, and paid it over to a party, to whom one of the firm, by letter and assignment, directed him to pay it, is admissible, such facts not being regarded as privileged communications from his client. Fulton vs. Maccracken, 18 Md., 528.
Mr. Riddle, when called by the defendant, produced the receipts referred to by him, and proved the signatures of the plaintiff thereto, as the authorities show that he had a right to do, even although he had received them as attorney; whereas the exception is directed against the admissibility of all the evidence of the witness, including the portions which were thus admissible, even if the residue were privileged.
Upon these grounds, and upon the state of the proofs as disclosed to us by the record, we are of opinion that the ruling set forth in the first exception must be sustained. ’
We have already noticed the fact that the first exception contains every word of the evidence to be found in the recoi’d. The seventeen exceptions following do not refer to the first exception or to each other in any way. According to the well-established practice and uniform course of appellate courts, bills of exceptions must be considered as wholly distinct from each other, unless they contain sufficient words of connection. Armstrong vs. Thruston, 11 Maryland, 148; and so are all the authorities. And considering these subsequent exceptions separately, as we are thus forced to do, we are confronted by the difficulty that neither of them contains, within itself, or by reference to any other exception, one word of the evidence. How is it possible then that this court can decide that the court below erred in the particular rulings complained of in each exception ?
It is clear that a court is as much bound to refuse an instruction upon the ground that there is no evidence' before *245 it to sustain the hypothesis of the prayer, as because the prayer states the law erroneously. And how can the appellate court declare that the ruling was erroneous,, when the absence from the exception of the requisite evidence to sustain the prayer supports the presumption that none was really produced ?—“ de non apparentibus,” &c.
The law of the case is correctly stated in Reynolds vs. Negro Juliet et al., 14 Maryland, 118, supported by a multitude of similar cases. Where a bill of exceptions sets out no evidence, and contains nothing but a prayer which was rejected, the appellate court must intend that the court below acted properly in refusing the instruction.”
A particular examination of each exception will demonstrate the impossibility of their consideration by this court, and we must, therefore, affirm the rulings below upon the presumption that they were justified by the state of the proof.
The 18th exception sets forth a prayer in which the court was asked to instruct the jury that, “if it appear from all the evidence that the plaintiff" has testified falsely, knowingly, with regard to important or material particulars involved in her case, whether of time or place, or person, in reference to which she could not well be mistaken, she must be regarded as guilty of deliberate falsehood, and her evidence must be rejected by the jury upon the maxim, falsus in uno, falsus in omnibus—false in one respect, false in all.”
Although, as we have shown, the state of the record prevents us from reversing for error in this instruction, we consider it proper to make a somewhat particular statement of the law on the subject, in view of the frequent efforts in this jurisdiction, to urge upon the courts the doctrine embodied in the prayer.
It has always been a fundamental principle in trials at law that to the jury alone belongs the determination of all issues of fact arising in a cause, while upon the court devolves the decision of all questions of law, including the competency of witnesses and the admissibility of evidence. So positive is this rule that the court is not at liberty to exclude from the jury any evidence, however slight, provided it be such as may tend *246 to induce a rational mind to draw from it the conclusion sought to be deduced by the party offering the evidence. That the jury may perform their part of this duty efficiently and conscientiously, it is essential that they should possess the exclusive power of passing upon the credibility of the witnesses, since, if this privilege were exercised by the judge he would be thereby, in effect, himself deciding the questions of fact, by limiting the decision of the jury to the testimony of those witnesses only whose evidence in his opinion is worthy of belief. But the United States courts possess the right, when properly appealed to, in civil cases, and always in criminal eases, to advise the jury as to the weight which they may give to particular evidence, leaving, however, to the jury the ultimate power of determining the-question of the credibility of the witnesses for themselves. The English practice on this subject is thus expressed in the 1st volume of Taylor’s Evidence, sec. 171:
“Although it is the exclusive province Af the jury to fix the due weight which ought to be given to presumptions of fact, juries are usually aided in their labors by the advice and instruction of the judge, more or less strongly urged at his discretion. Such, for instance, is the caution given to juries to regard with distrust the testimony of an accomplice, unless it be materially confirmed by other evidence. So if a witness be detected in telling a falsehood in one part of his testimony, the jury will be advised to place little reliance on the remainder of his narrative.”
In 1st Greenleaf on Evidence, section 461, note 2, the rule is thus stated:
“ Whether a witness who has sworn falsely as to one material fact, is to be believed as to other facts, is a question for the jury. The maxim falsus in uno, falsus in omnibus, as often stated by the court, is merely advisory. It is not a rule of law that all testimony of such a witness must be disregarded. It may be and should be regarded with suspicion, and received with caution. The law is the same as it is with regard to acccomplices.”
The author quotes in support of this a number of cases in *247 the different States of the Union. In Commonwealth vs. Wood, 11 Gray, 93, the court, Chief Justice Shaw presiding, says:
“Nor was it the duty of the court to say to the jury, that if the witness was wilfully false upon any material point, they could place no reliance upon any of her testimony. There is no absolute rule of this sort, nor in the nature of things could there be. When competent evidence is before the jury the degree of faith to be reposed in it, and its effect in producing conviction cannot be governed by any abstract and inflexible rule. The relation of the facts the witness states to the other facts proved in the case may be such that the jury cannot help believing them.”
In Commonwealth vs. Billings, 97th Massachusetts, 406, the Chief Justice says:
“ It is not an absolute and inflexible rule of law that the testimony of a witness is to be wholly disregarded and rejected, except in those particulars in which there is corroboration by other credible witnesses, if the jury find that the witness has deliberately sworn falsely in relation to a material matter. This question was distinctly raised and adjudicated by the court in a recent case. On a reconsideration of the point, in the light of the very clear and forcible argument of the couusel of the defendant, we are satisfied that this decision was correct, and that the reasons on which it rests, clearly and tersely stated in the opinion of the court, are satisfactory and decisive against the adoption of the maxim, falsus in uno, falsus in omnibus, as an established rule of the law of evidence. The eases cited on the brief of the Attorney General, show that this conclusion is supported by a very great weight of authority.” The instructions in that case which the court on appeal thus approves, were that: “ If the jury should find that the witnesses had wilfully sworn falsely in some material particular, yet there was no rule of law which would forbid them to believe other portions of their testimony.”
The instruction asked for in the present case is supposed to find support in the language used by Mr. Justice Story in *248 delivering the judgment in the case of the Santissima Trinidad, in 7th Wheaton, 336; and adopted in the case of Sherwood vs. McIntosh, 1st Ware’s Circuit Court Reports, 106. But the rule expressed in those cases could never have been designed by those courts as applicable to trials at law. In each case the court was acting as a jury in the dermination of facts in admiralty, and the language used by the judges in giving their reasons for deciding as they did upon the facts then under examination, is precisely that which a jury would be authorized to use in its chamber in discussing among themselves their reasons for disbelieving the testimony of a witness who had sworn falsely in some particular in the pending trial. As uttered by a judge in equity or in admiralty deciding upon the weight of evidence, there is nothing objectionable in the principle announced. This distinction is clearly pointed out in the ease of Mead vs. McGraw, 19th Ohio State Reports, 64, from which we make the following quotation:
“ The maxim falsus in uno, falsus in omnibus is derived from the civil law, and addresses itself more particularly to tribunals charged with the investigation of evidence and the determination of issues of facts, and should be applied with more or less force, according to circumstances. Under the civil law justice was administered by fixed tribunals, which were charged with the determination of both law and fact. To this class, under our system of jurisprudence, belong courts of equity and admiralty courts. In passing upon the credibility of witnesses in determining issues of fact, the maxim is often applied by these tribunals as justifying the total disregard of the testimony of particular witnesses. Such was the case in the opinion of the matter of the Santissima Trinidad, 7 Wheat., 283. For the administration of justice under the common law a jury is constituted, to whom, as a distinct body, is exclusively confided the duty of determining questions of fact. And we agree with the Supreme Court of North Carolina, in the case of The State vs. Williams, 2d Jones’ Law Reports, 257, that the maxim is, in a common law trial, to be applied by the jury according to *249 their own judgment for ahe ascertainment of the truth, and is not a rule af law in virtue of which the judge may withdraw the evidence from their consideration, or direct them to disregard it altogether.”
In Mercer vs. Wright, 3d Wisconsin Reports, 645, the court says:
“ It is true as a general rule, that when a witness deliberately swears falsely in regard to a material fact, the jury are not bound to believe him in any of his statements, unless he is coroborated. But it is wrong to say that the jury are not at liberty to believe him. The maxim falsus in uno, falsus in omnibus, does not operate to preclude the jury from believing the witness if they chose to do so. The jury may believe any competent witness, though in many instances they ought not. A jury ought npt to convict upon the testimony of an accomplice uncorroborated, but all now agree that they may do so. It would have been correct for the court to give the jury general rules by which the credibility of the witness may be judged ; but it is not correct to tell them that they were not at liberty to believe the witness.”
It is unnecessary to extend this opinion by quotations from numerous other cases in the different States of the Union, w'here similar language has been uttered by the courts. It is enough to say that the rulings in those cases, upon the points in question, command our entire approval, and we have found no cases to the contrary to shake this conclusion.