SEYMOUR E. ALPER, Appellant, v. PETER LUPOLI et al., Respondents.— In an action *inter alia* to impress a trust on certain property allegedly pledged by plaintiff, plaintiff appeals from so much of a judgment of the Supreme Court, Queens County, entered April 30, 1965 upon the court's decision after a non-jury trial, as dismissed the second cause of action on the merits and awarded costs and disbursements to defendants. Judgment modified on the law and the facts (1) by striking out the second, third and fourth decretal paragraphs; and (2) by substituting therefor a provision directing judgment on the second cause of action in favor of plaintiff to the extent of (a) declaring that defendant Ray Lupoli holds the first mortgage on the premises owned by the defend-

ant corporation as trustee for the plaintiff and as successor-pledgee of defendants Kraitz and Silverman; and (b) directing defendant Ray Lupoli to comply with the provisions of article 9 of the Lien Law so far as said mortgage is concerned. As so modified, the judgment, insofar as appealed from, is affirmed, without costs. Findings of fact numbered 10 and 11 and the second conclusion of law are modified in accordance herewith and new findings of fact are made as indicated herein. On June 3, 1959, defendants Kraitz and Silverman loaned $30,000 to a corporation, one of the principals of which was the plaintiff. The latter secured the loan by assigning a mortgage held by him on certain real property owned by the defendant corporation and by delivering to the lenders' attorney a stock certificate for 500 shares of the defendant corporation's stock. Simultaneously, plaintiff and the lenders executed, and said attorney accepted, a collateral agreement which provided, *inter alia,* that the stock was to be held in escrow by the attorney; and that, in the event the loan was repaid, the stock would be returned to plaintiff and the lenders would deliver a reassignment of the mortgage. Thereafter the borrower, after repaying $5,000, defaulted. The lenders obtained a judgment against the borrower which remained unsatisfied and then commenced an action to foreclose the mortgage. Thereafter, defendant Ray Lupoli purchased from Kraitz and Silverman the unsatisfied judgment and the collateral held by them. At the trial, plaintiff proceeded on the theory that the sale of the stock and the mortgage by Kraitz and Silverman to Ray Lupoli was a violation of article 9 of the Lien Law since those defendants admittedly failed to give plaintiff notice of the sale and failed to conduct a public sale. In our opinion, the transaction of June 3, 1959 constituted a pledge of the stock and the mortgage. With respect to the stock, plaintiff waived his right to notice of the sale and the opportunity to redeem required by article 9 of the Lien Law, by providing in the collateral agreement that, upon default, the escrow agent was to deliver the certificate of stock to the pledgees, to whom title was then to pass. Accordingly, the plaintiff lost his pledgor's rights as to that property by defaulting and may not now attack Ray Lupoli's title. With respect to the mortgage, however, there was no waiver, express or implied, of plaintiff's common-law and statutory rights. Since Ray Lupoli is the assignee of the original pledgees, he holds the mortgage as a successor-pledgee. In order to cut off plaintiff's right in this property, he must conform to the requirements of article 9 of the Lien Law. Defendants Kraitz and Silverman are not entitled to costs against plaintiff. They were not parties to the second cause of action, which was the only cause of action tried, and filed no brief in this court. Beldock, P. J., Ughetta and Rabin, JJ., concur; Hopkins and Benjamin, JJ., concur in part and dissent in part with the following memorandum: We concur with the majority insofar as it determines that defendant Ray Lupoli holds the mortgage as trustee for plaintiff and directs said defendant to comply with article 9 of the Lien Law with respect to the mortgage. We dissent insofar as the majority denies plaintiff that same relief with respect to the 500 shares of stock. This was an action to impress a trust on said mortgage and stock. This stock was half of that issued by a realty corporation originally formed and owned by plaintiff and defendant Peter Lupoli. The mortgage was a lien on the realty (and sole asset) of that corporation; plaintiff says that he owned it, having gotten it by assignment after he bought it with his own funds; defendants say that plaintiff bought it with corporate funds and wrongfully had it assigned to himself alone; it is undisputed that it was in plaintiff's possession on June 3, 1959. On that date plaintiff pledged the stock and mortgage as security for a loan from defendants Kraitz and Silverman to another corporation of which plaintiff was a principal. There was a default

on that loan and the lenders sued the corporate borrower to recover the moneys loaned. While that action was pending, plaintiff went to Mexico on business for a year. Plaintiff says that defendant Peter Lupoli promised to look after his interests while he was away. Peter Lupoli denies this, but admits that he agreed to look after their realty corporation's affairs during that period. Some months after plaintiff left, the lenders (defendants Kraitz and Silverman) recovered an uncollectible judgment against the corporate borrower and then started an action to foreclose the pledged mortgage on the realty of the corporation whose stock was owned by plaintiff and Peter Lupoli. While plaintiff was still in Mexico, that corporation's attorneys arranged a settlement of the foreclosure action. Pursuant to that settlement agreement, the balance due the lenders was paid to them; and in return the lenders gave assignments of the pledged mortgage and stocks to defendant Ray Lupoli, the brother of Peter Lupoli. Plaintiff says that it was Peter Lupoli who actually paid the lenders and that his brother Ray was merely Peter's nominee for the taking of the assignments. When plaintiff returned from Mexico, he tendered to Peter Lupoli the amount paid to the lenders and demanded the return of the mortgage and stock. This having been refused, he brought this action to impress a trust on the theory that there was a trust relation between himself and Peter Lupoli and that Peter Lupoli acted as his agent when the mortgage and stock were obtained from the lenders in the name of Ray Lupoli as the nominee of Peter. At the trial plaintiff abandoned his theory of a constructive trust based upon a trust relation between himself and Peter Lupoli and instead tried his case on the theory that the lenders' private sale of the pledged mortgage and stock to Ray Lupoli was in violation of article 9 of the Lien Law, which requires a public sale on notice to the owner of the pledged property; and the pleadings were conformed to the proof supporting that theory. The majority is holding that the sale of the mortgage and stock to Ray Lupoli was contrary to the provisions of the Lien Law; that in the absence of a waiver of the protective provisions of that statute, such sale does not cut off plaintiff's rights in the property; that with respect to the mortgage the pledge agreement did not constitute a waiver of the statutory provisions, plaintiff's rights therein were not cut off by the sale to Ray Lupoli and Ray Lupoli consequently holds the mortgage as trustee for plaintiff; and that with respect to the stock the pledge agreement constituted a waiver of the protective provisions of the Lien Law and plaintiff's rights therein consequently were cut off by the sale to Ray Lupoli. We agree with the majority's holding with respect to the mortgage; we disagree with its holding with respect to the stock. In our opinion, the ambiguous provisions of the pledge agreement do not constitute a waiver of the protective provisions of the statute. The pledge agreement for the mortgage and the stock was a single instrument. It provided for an "assignment" of the mortgage and a "pledge" of the stock. As the majority has correctly concluded, the agreement was a pledge of both the mortgage and the stock, despite the difference in semantics. With respect to the stock, the agreement provided that it be held in escrow by the lenders' attorney; that it be returned to plaintiff on repayment of the loan; and that in the event of a default the escrowee would deliver it to the lenders and "title of same shall pass on to them." With respect to the mortgage, the agreement merely provided for a "reassignment" to plaintiff on payment of the loan and contained no provision for the contingency of a default. Undoubtedly, a provision for disposition of the mortgage in the event of default was considered unnecessary because it had already been assigned to and given into the possession of the lenders; and upon default they had only to retain possession of it. As we read this pledge agreement, we see in it no intention to make any material differentiation

between the mortgage and the stock with respect to the parties' rights under the Lien Law. In our view, the differences in the provisions relating to the mortgage and stock were ones of form and semantics only; and the intent was merely to serve convenience, not to work a difference in substance and rights. To hold that this single document, expressing a single transaction, evidences an intent to waive substantial statutory rights with respect to the stock, but not with respect to the mortgage, is to give it a construction which would make the agreement not merely anomalous but also contradictory. In our opinion, the agreement cannot and should not be so read. We believe the agreement was not a waiver of the Lien Law provisions with respect to the stock any more than it was with respect to the mortgage; that the sale to Ray Lupoli did not cut off plaintiff's rights with respect to the stock; and that Ray Lupoli holds not only the mortgage, but also the stock, as trustee for plaintiff. It should be remembered that this is an action in equity. The scanty record does not disclose and we cannot tell what tactical reasons induced plaintiff to abandon, at trial, his original theory of abuse of a trust relation by Peter Lupoli, and to proceed instead on the theory of a violation of the Lien Law. But on the surface, at least, the transaction here attacked by plaintiff would seem to have a suspicious aura about it — so suspicious, indeed, that we would have favored a new trial in the interests of justice if we were not hereby concluding that on the present record plaintiff is entitled to a judgment that defendant Ray Lupoli holds the mortgage and the stock as trustee for plaintiff and that he must comply with the Lien Law with respect to all the pledged property. In our opinion, the result we reach is not only legally correct but also equitable and proper in light of the fiduciary " partnership " relationship between plaintiff and Peter Lupoli.