**Edward S. PHILLIPS, Nicholas S. Phillips, George P. Pappas, George F. Moutis, Plaintiffs,**

v.

**Al D. COHEN, Joseph Braver, Defendants.**

**No. 63 C 1241.**

United States District Court
E. D. New York.

April 14, 1967.

Short & Dworkin, by Thomas J. Short, New York City, for plaintiffs.

Epstein, Newman & Lubitz, New York City, for defendant Joseph Braver.

Melvin H. Fox, New York City, for defendant Al D. Cohen.

MISHLER, District Judge.

The plaintiffs demand judgment against the defendants for the sum of Thirteen Thousand Dollars ($13,000), with interest from July 1, 1962, and costs and disbursements. They base their claim on a promissory note, dated February 6, 1959, under which the defendants undertook to pay the plaintiffs Thirteen Thousand Dollars ($13,000) in monthly installments commencing on July 1, 1962. Answering individually, each defendant raises the affirmative defenses of release, payment and accord and satisfaction.

The parties executed a stipulation of agreed facts, dated December 21, 1966, and the contested issues of fact were tried by the court on submitted papers.

By an agreement dated February 6, 1959, the plaintiffs, owners of all the issued and outstanding stock of the Phil-

lips-George Corporation, a New Jersey corporation, agreed to sell their interests to the defendants for the sum of Twenty-Three Thousand Dollars ($23,000), Ten Thousand Dollars ($10,000) cash and the balance by the execution of a promissory note which is the subject matter of this action. The agreement required the defendants to immediately deliver to an escrow agent the certificates of the stock of the corporation " * * * endorsed in blank and with stock transfer stamps affixed, for delivery or disposition in accordance with the terms of this agreement." In addition, the defendants were required to deposit with the escrow agent [1] all the corporate books, plus all instruments that were necessary to remove the buyers from the ownership and control of the corporation, including waivers of notice of special meetings of the directors and stockholders and the defendant-buyers' undated resignations from their positions as officers and directors of the corporation.

These provisions are not unusual where the sale of a business is effected by the sale of stock rather than by the sale of the corporate assets. Their obvious purpose is to secure payment of the promissory note.

The note in issue provided for constant monthly payments of interest and principal, of $209.37 each, commencing July 1, 1962. Paragraph 5(e) of the agreement provided, however, that in the event the defendants or the corporation default in the payment of rent, under a lease dated May 25, 1956, or the promissory note, and the defendants fail to cure such default within the time provided, the escrow agent " * * * shall forthwith and with reasonable dispatch, deliver the Certificates of Stock * * * " and the other instruments in his possession to the plaintiffs.

Thereafter, the defendants defaulted in the payment of rent and, after notice was served by the plaintiffs, they failed to cure the default. Pursuant to the agreement, the escrow agent turned over all the instruments, including the certificates of stock, endorsed in blank, to the plaintiffs.

After directing the escrow agent to turn over the documents referred to, however, paragraph 5(e) of the agreement continues:

" * * * and all payments heretofore made by the Buyer [defendants] to the Seller [plaintiffs] as provided for in paragraphs 4(a) and (b) [2] shall become forfeited and retained by the Seller as liquidated damages. Thereupon, all obligations between the Seller and Buyer and the Escrow Agent shall cease."

Thus, the question posed for this court's determination is whether the parties intended that the obligation under the note should be discharged by plaintiffs' retention of the collateral.

The answer must be given in the affirmative. In light of the surrounding circumstances in this case, the court would have to adopt a tenuous construction of the agreement in order to

---

1. The escrow agent was Louis J. Pantages, Esq., a member of the firm of Mead, Gleeson, Hansen & Pantages, Esqs., Newark, New Jersey, and an attorney for one of the plaintiffs.

2. Paragraph 4 provides:
"*Payment of Purchase Price*
(a) The purchase price is $23,000.00 which the Buyer shall pay to the Seller, in proportion to the interest of each, by cash or certified check as follows:
 (1) $1,800.00 heretofore paid and receipt whereof was acknowledged on the execution of the Contract of Sale on January 31, 1959.
 (2) $8,200.00 upon execution of this Agreement, receipt whereof is hereby acknowledged.
 (3) $13,000.00 the balance, by promissory note wherein the Buyer, are the Makers, and the Seller, are the Payees, in the form hereto annexed.
(b) Simultaneously with the execution of this Agreement, the buyer will deliver to Louis J. Pantages, Esq., the Escrow Agent, certificates for all the shares of stock of the Corporation, duly endorsed in blank and with stock transfer stamps affixed, for delivery or disposition in accordance with the terms of this Agreement."

sustain the plaintiffs' position. The clauses in issue clearly referred to the tripartite relationship existing between the buyer, seller and escrow agent, rather than a bilateral relationship between the seller and buyer on the one hand and the escrow agent on the other. This view of the agreement is enforced by the parties' failure to provide an alternative procedure for the sale or appraisal of the collateral. Accordingly, the plaintiffs received everything that they had bargained for when they retained the monies paid and were restored to their position of ownership and control of the corporation. See Tymon v. Wolitzer, 39 Misc.2d 504, 512, 240 N.Y.S.2d 888, 897 (Sup.Ct. 1963). The agreement for the transfer of the security in satisfaction of the debt was valid. See, Alexander v. Phillips Petrol. Co., 130 F.2d 593, 604 (10th Cir. 1942).

 While generally agreements which provide that upon default the pledgee may retain the security in satisfaction of the debt are against public policy and void, the rule rests on the courts' realization that the creditor and the debtor are often in such unequal bargaining positions that the former may be able to exact severe forfeiture terms from the latter. The rule's purpose, therefore, is to ensure that the pledgor has the privilege to redeem. Restatement, Security § 55(1) (1941). Such an agreement will be enforced, however, if the agreement for the pledgee's retention of the security in satisfaction of his claim is made after the creation of the pledge, and if the pledgee sustains his burden of showing that the bargain was free from fraud and oppression. Hawley v. Hawley, 72 App.D.C. 376, 114 F.2d 745 (1940); Restatement, Security § 55 (2) (1941).

The reasons which underlie the restrictive rule are absent in this case, where there appears to have been an arms-length negotiation between a seller and a buyer with relatively equal bargaining positions. Moreover, it is indicative

that it is not the pledgor, the party sought to be protected by the general rule, who seeks to have paragraph 5(e) of the agreement invalidated, but rather the pledgee, who now seems to feel that the security for which he bargained was inadequate. The pledgor, on the other hand, relies on paragraph 5(e) of the agreement and does not attack the operation of that provision, even though it had the effect of transferring the title to security back to the pledgee (plaintiffs). See, Alper v. Lupoli, 25 A.D.2d 558, 559, 267 N.Y.S.2d 689, 691 (2d Dep't), modified on other grounds, 17 N.Y.2d 888, 271 N.Y.S.2d 312, 218 N.E. 2d 344 (1966). While it may be that the stock is now worthless, the plaintiffs retained Ten Thousand Dollars ($10,000), and might have originally insisted upon additional security.

It should be noted that the retention of security in satisfaction of a debt is not unknown to the law. See N.J.U.C.S.A. § 23; N.Y. Personal Property Law, McKinney's Consol.Laws, c. 41, § 80. Indeed, the Uniform Commercial Code, which was adopted by both New York and New Jersey subsequent to the date of the subject contract, provides for just such a method of satisfaction where less than sixty percent of the cash price has been paid, and notice is given to the debtor after default. The official comment to section 9–505 states:

> Experience has shown that parties are frequently better off without a resale of the collateral; hence this section sanctions an alternative arrangement. In lieu of resale or other disposition, the secured party may propose under subsection (2) that he keep the collateral as his own, thus discharging the obligation and abandoning any claim for a deficiency.

The court concludes that the provisions of the agreement relating to disposition of the security upon default were valid. The complaint is dismissed.

This memorandum contains the findings of fact and conclusions of law re-

quired under Rule 52 of the Federal Rules of Civil Procedure.

The clerk is directed to enter judgment in favor of the defendants and against the plaintiffs dismissing the complaint.