## HARDENBERGH v. RAY.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE
DISTRICT OF OREGON.

No. 113. Argued December 12, 13, 1893. — Decided January 3, 1894.

When the jurisdiction of a Circuit Court has fully attached against the
tenant in possession in an action of ejectment, the substitution of the
landlord as defendant will in no way affect that jurisdiction, although
he may be a citizen of the same State with the plaintiff.

By the laws of Oregon in force in 1872, a testator was authorized and em-
powered to devise after-acquired real estate.

A will in Oregon, duly executed May 15, 1872, and duly proved after the tes-
tator's death in 1886, in which he devised to his sister " all my right, title,
and interest in and to all my lands, lots, and real estate lying and being
in the State of Oregon," except specific devises previously made, and also
" all my personal property and estate," shows an intent not to die intes-
tate, and passes after acquired real estate.

THE facts are stated at length in the opinion of the court.
It is sufficient here to say that Peter De Witt Hardenbergh, of
Portland, Oregon, made his will May 15, 1872, in form as pre-
scribed by the laws of the State to pass real estate, that he
died in 1886, and that the will was duly admitted to probate,
and remains in full force. In 1882 he acquired a tract of
land in Portland, of which he was seized and possessed at the
time of his death. The question at issue in this case was,
whether this after-acquired estate passed by a clause in the
will devising to his sister "all my right, title, and interest in
and to all my lands, lots, and real estate lying and being in the
State of Oregon." The action to test this question was eject-
ment, brought by the brother of the testator, a citizen of New
York, against tenants in possession. The devisee having died,
her heirs were, on their own motion, substituted as defend-
ants in the place of the tenants. One of these heirs was a
citizen of New York. The statute in force in Oregon at the
time of the making of the will and of the death of the testa-
tor provided that " every person of twenty-one years of age
and upwards, of sound mind, may, by last will, devise all his

estate, real and personal, saving to the widow her dower." The court below held that it had jurisdiction in spite of the fact that the plaintiff and one of the defendants were citizens of the same State, and held that the after-acquired property passed to the sister under the will. 33 Fed. Rep. 872. The plaintiff sued out this writ of error.

*Mr. Henry B. B. Stapler* (with whom was *Mr. Henry W. Smith* on the brief,) for plaintiff in error.

I. Under the law of Oregon, as it stood at the date of the making of the will, and at the time of Mr. Hardenbergh's death, real estate acquired after the making of a will did not pass thereunder, but descended to the heirs at law.

Oregon was settled by settlers from the older States. They took the rules of the common law with them into their new home.

On June 27, 1844, "the common law of England, not modified by the statutes of Iowa or of this government," was formally declared by the legislature of the provisional government of Oregon to be the law of the land. Laws of Oregon, 1843–1849, 100. This shows the recognition of the common law by the early emigrants to Oregon. Upon the organization of the state government the common law in its entirety, not modified by the statutes of Oregon, became the law of the land.

That the common law is recognized as the law of Oregon in all cases where the same has not been modified by statute, has been held in numerous cases in the Oregon courts. *Bileu* v. *Paisley*, 18 Oregon, 47; *Wood* v. *Rayburn*, 18 Oregon, 3; *Paulson* v. *Buckman*, 9 Oregon, 264; *Ford* v. *Umatilla County*, 15 Oregon, 313.

So that the statute of wills of Oregon with the common law rules as to matters not covered by the statute, became the law of the State of Oregon, and so continued so far as the purposes of this case are concerned until after the death of Mr. Hardenbergh, and until nineteen years after the making of his will, when the law of Oregon was changed; and in the

year 1891 it was declared as a new rule of law, that "any estate or interest in real property acquired by any one after the making of his or her will shall pass thereby, unless it clearly appear therefrom that such was not the intention of the testator." Laws of Oregon, 1891, 99.

By the rule of the common law, under a statute simply giving the power to make a will of the real-estate of the testator, real estate acquired after the date of the making of the will did not pass to the devisee, but descended to the heirs at law. *Harwood* v. *Goodkight*, 1 Cowp. 87, 90; *Brunker* v. *Cook*, 11 Mod. 121; *Arthur* v. *Bokenham*, 11 Mod. 148; *Wind* v. *Jekyl*, 1 P. Wms. 572; *Marwood* v. *Turner*, 3 P. Wms. 163; *Jackson* v. *Blanshen*, 3 Johns. 292; *S. C.* 3 Am. Dec. 485; *Jackson* v. *Halloway*, 7 Johns. 394; *Jackson* v. *Potter*, 9 Johns. 312; *Minuse* v. *Cox*, 5 Johns. Ch. 441; *S. C.* 9 Am. Dec. 313; *Van Kleeck* v. *Dutch Church of New York*, 20 Wend. 457; *Pond* v. *Bergh*, 10 Paige, 140; *Parker* v. *Bogardus*, 5 N. Y. 309; *Quinn* v. *Hardenbrook*, 54 N. Y. 83; *Ballard* v. *Carter*, 5 Pick. 112; *S. C.* 16 Am. Dec. 377; *Ewer* v. *Hobbs*, 5 Met. (Mass.) 1; *Fay* v. *Winchester*, 4 Met. (Mass.) 513; *Hays* v. *Jackson*, 6 Mass. 149; *Brigham* v. *Winchester*, 1 Met. (Mass.) 390; *Girard* v. *Philadelphia*, 4 Rawle, 323; *Johns* v. *Doe*, 33 Maryland, 515; *Jones* v. *Shoemaker*, 35 Georgia, 151; *Battle* v. *Speight*, 9 Iredell, (Law,) 288; *Roberts* v. *Elliott*, 3 T. B. Mon. 395.

This rule of the common law, thus universally recognized, prevailed also in the State of Oregon.

II. It is therefore respectfully submitted that the conclusion arrived at by the learned court below, that at the date of Mr. Hardenbergh's death real estate acquired after the making of his will passed thereunder, is erroneous.

It is to be observed that the court below cites no authority of the State of Oregon, in support of the position that after-acquired lands passed under a will made previous to their acquisition. Indeed, only two cases, *Liggat* v. *Hart*, 23 Missouri, 127, and *Applegate* v. *Smith*, 31 Missouri, 166, in support of the position of the court on the point in question are cited, over against which stands the vast array of decisions above

referred to, representing the concurring opinions of the courts of the American Union and of England. It is submitted that an examination of these cases shows that they are not authorities which support the position of the court below, but rest upon grounds peculiar to the State of Missouri and not applicable elsewhere.

III. There remains then only to consider the further reasons advanced in the opinion of the court below. The learned court concedes that the common law of England prevailed in Oregon. This concession would necessarily be fatal to the position taken by the court if the rules of the common law as to after-acquired real estate, which had been repeatedly declared under the statute of 32 Henry 8, c. 1, were held to be a part of the common law. This difficulty by the court is overcome by holding, that "the statute of Henry 8 is no part of the common law, and as such did not become a part of the law of the English colonies. It is conceded that the common law of England, as it stood prior to the accession of James 1, together with the statutes passed in aid thereof, was brought to this country by the colonists and became the basis of the law of the land, 1 Kent, 342, 472, Story's Constitution, secs. 147, 157–8. The Statute of Wills, so far from being in aid of the common law, was in derogation of it, and *pro tanto* superseded it." The court, therefore, holds that "this is not a question of the common law."

It is respectfully submitted that this position is erroneous, and that no distinction can be drawn between the statutes "in aid of" or "in derogation" of the common law, but that that statute of Henry 8, and all other general statutes, together with the common law rules in reference thereto, became the common law of the American colonies.

This was so ruled on an analogous point in the leading case of *Bogardus* v. *Trinity Church*, 4 Paige, 178. See also *Commonwealth* v. *Leach*, 1 Mass. 59; *Commonwealth* v. *Knowlton*, 2 Mass. 530; *Sackett* v. *Sackett*, 8 Pick. 309; *Girard* v. *Philadelphia*, 4 Rawle, 323.

As the Statute of Wills was enacted in the 32d year of Henry 8, viz.: in the year 1547, which antedated the emigration

to this country from England, it necessarily follows that under the above authorities it and the rules of the common law in relation thereto became a part of the common law of the American Colonies.

If, however, in any view of the matter the statute of wills of Oregon can be held to have granted the power to a testator to devise after-acquired real estate, it is submitted that an examination of the will of Mr. Hardenbergh shows that under well-settled law no such intention can be gathered therefrom.

The statute of 1785, Virginia, (now suspended,) provided "That every person aged twenty-one years and upwards, being of sound mind, and not a married woman, shall have power, at his will and pleasure, by last will and testament in writing, to devise all the estate, right, title, and interest in possession, reversion, or remainder, which he hath, or at the time of his death shall have, of, in, or to lands," etc. Under this a will which bequeathed the whole of my property was held not to pass after-acquired lands. *Smith* v. *Edrington,* 8 Cranch, 66. See also *Lynes* v. *Townsend,* 33 N. Y. 558; *Quinn* v. *Hardenbrook,* 54 N. Y. 83; *Wetmore* v. *Parker,* 52 N. Y. 450.

*Mr. John H. Mitchell* and *Mr. James K. Kelly,* for defendants in error, on the question of jurisdiction said:

It is disclosed by the record that a question of jurisdiction was urged by the defendants in the court below, growing out of the citizenship of the parties. And it is now suggested by the defendants in error, without indulging in argument of the question, or doing more than presenting the facts on which it rests, that the court below had no jurisdiction of any of the defendants, and, therefore, if any modification whatever of the judgment of the court below is to be directed by this court, it should be to order a dismissal of the action for want of jurisdiction. As this action was commenced and issues joined prior to the act of March 3, 1887, 24 Stat. 552, c. 373, the question of jurisdiction must be determined by the laws then in force.

Mr. Justice Jackson delivered the opinion of the court.

The principal questions presented by the record in this case are, first, whether by the laws of Oregon, in force in 1872, a testator was authorized or empowered to devise after-acquired real property; and, second, whether, if such power existed, the after-acquired real estate in controversy passed by the testator's will in the present case.

The facts which give rise to these questions are as follows: Peter De Witt Hardenbergh, unmarried and without children, a citizen of Portland, Oregon, died in 1886, leaving a will executed by him May 15, 1872, which was duly probated and remains in full force and effect. By the first clause of the will the testator devised to several nephews, named therein, a certain farm in Ulster County, New York; by the second clause he devised to his sister, Catherine L. Tremper, all his right, title, and interest in and to all other lands in that county and State; and by the third and last clause he gave and bequeathed to his sister, Ellen E. Ray, "all my right, title, and interest in and to all my lands, lots, and real estate, lying and being in the State of Oregon, or elsewhere, except as aforesaid; also all my personal property and estate of whatsoever kind and nature."

At the date of the will the testator owned certain real property in Portland, Oregon, and in January, 1882, some ten years after the will was executed, he purchased, and at the time of his death owned, a parcel of land in the city of Portland, valued at $30,000, which is the subject of controversy in this suit.

Ellen E. Ray, the devisee under the third clause of the will, died intestate in 1873, leaving as her heirs Thomas L. Ray, Rachel L. Ray, Hylah E. Ray, and Mary E. Arbuckle, citizens of Oregon; John De Witt Ray, a citizen of Illinois; and Sarah A. Ray, a citizen of New York. Upon the death of the testator these heirs of Ellen E. Ray, who, under the laws of Oregon, (§ 3077, Hill's Anno. Laws of Oregon,) succeeded to her rights as devisee, took possession of the premises in controversy, as well as other real property in Oregon, owned by the testator at the time the will was executed.

Herman R. Hardenbergh, a brother of the testator, claimed

and demanded an interest in common with the heirs of Ellen E. Ray in the real property acquired after the execution of the testator's will, on the ground that as to those lands he died intestate. This claim was denied, and he thereupon brought an action at law in the nature of ejectment against Charles Sliter, J. C. Miller, and W. H. West, citizens of Oregon, who were in possession of the demanded premises as tenants of the heirs of Mrs. Ellen E. Ray.

Subsequently, on their own motion, these heirs were substituted as defendants in place of their tenants, against whom the action was originally brought, and by their answer set up that by the law of Oregon the land in question passed to them by the third clause of the will, and that the testator did not die intestate in respect thereto.

The heirs of Ellen E. Ray having thus made themselves parties to the suit, and one of them (Sarah A. Ray) being a citizen of the same State (New York) as the plaintiff, the point was made in the court below, and has been presented in this court, that the jurisdiction of the United States Circuit Court was thereby defeated.

This objection to the jurisdiction of the court is without merit, and was properly overruled by the lower court. When the original suit was brought against Sliter, Miller, and West, the persons in possession, the court acquired jurisdiction of the controversy, and no subsequent change of the parties could affect that jurisdiction. This is well settled by the authorities. *Mullen* v. *Torrance,* 9 Wheat. 537; *Dunn* v. *Clarke,* 8 Pet. 1; *Clarke* v. *Mathewson,* 12 Pet. 164; *Whyte* v. *Gibbes,* 20 How. 541; *Phelps* v. *Oaks,* 117 U. S. 236, 240. In this last case it was held that in ejectment against tenants in possession of real estate, whose landlord is a citizen of another State, the plaintiff has a real and substantial controversy with the defendant within the meaning of the act for the removal of causes from state courts, which continues after the landlord is substituted and becomes a party for the purpose of protecting his own interests. The rule announced in this case clearly settles, in a case like the present, that where the jurisdiction of the court has completely attached against the tenant

in possession, the substitution of the landlord as a defendant for such tenant will in no way affect or defeat the jurisdiction of the court.

By stipulation of parties the trial of the cause by jury was waived, and all questions of law and fact were submitted to the court for its decision. The court found the facts substantially as set out above, and the conclusions of law announced were to the effect that at the time the will was made the testator was empowered and authorized by the laws of Oregon to devise any real estate situated in that State, whether acquired before or after the making of the will, of which he might die seized and possessed. Also, that the intention of the testator, as manifested by the will in the present case, was to devise all of his real estate situated in the State of Oregon to Ellen E. Ray, and that under and by virtue of the devise the demanded premises, on the death of the testator, vested in the defendants as her heirs, and that they were entitled to the exclusive possession thereof. 33 Fed. Rep. 812.

The present writ of error is prosecuted to reverse that judgment. The two assignments of error present the questions heretofore stated.

For the plaintiff in error it is contended that the testator died intestate in respect to the demanded premises, for the reasons that at the time of the execution of his will he possessed no testamentary power to devise after-acquired lands, and because his will manifests no intention to dispose of such property. If either of these propositions can be sustained, the judgment of the court below must be reversed.

In support of the first proposition, it is urged, on behalf of the plaintiff in error, that the common law, with its limitations and restrictions upon testamentary power in respect to real estate, was in force in the State of Oregon at the date of the execution of the will, and up to the death of the testator. Without reviewing the authorities, it is well settled that by the common law lands were not devisable, except in particular places where custom authorized it. This disability of the common law was partially removed by the statute of 32 Henry 8, c. 1, which authorized persons having title to land to dispose

thereof by will, and was construed as restricting the right of devising lands, to such an interest only, as the testator had at the time of the execution of the will. Under this statute real estate, subsequently acquired, could not pass by devise; in other words, under the statute of 32 Henry 8 the will as to lands spoke from the date of its execution. So that a general devise of all the testator's estate would comprehend and include all the personalty to which he was entitled at the time of his death, but would not embrace after-acquired land, though such might be the expressed intention of the testator. The reason given for the distinction between real and personal estate was that a devise of land was regarded in the same light as a conveyance, and as a conveyance at common law would not vest for want of seizin, it was therefore held to be operative only on such real estate as the testator might have at the time of the making of the will, that is to say, that a devise was in the nature of a conveyance or appointment of real estate then owned, to take effect at a future date, and could not therefore operate on future acquisitions.

While this strict and arbitrary rule of the common law has been modified by the statutes of most, if not all, of the States of the Union, it is contended for the plaintiff in error that the rights of the parties in the present case are controlled by it, for the reason that the legislature of Oregon did not confer by statute testamentary power to dispose of after-acquired real property until February, 1891.

The provisional government of Oregon in 1844 formally declared by its legislature that "all the statute laws of Iowa Territory, passed at the first legislative assembly of that Territory, and not of a local character, and not incompatible with the conditions and circumstances of this country, shall be the law of this country, unless otherwise modified; and the common law of England, and principles of equity, not modified by the statutes of Iowa, and of this government, and not incompatible with its principles, shall constitute the law of the land."

Among the laws enacted by the first territorial legislature of Iowa, and thus adopted by the provisional government of Oregon, was the following act relative to wills:

"SECTION 1. *Be it enacted by the Council and the House of Representatives of the Territory of Iowa,* That any person having an estate in any lands, tenements, or hereditaments, or any annuity or rent charged upon, or issuing out of the same, or any goods or chattels, rights, credits,' and choses in action, or in possession, and property of every description, whatever, may give or devise the same to any person by last will and testament by him or her lawfully executed." Laws of the first session of the legislative assembly of the Territory of Iowa, 1838–39, 471.

This statute was substantially the same as that of 32 Henry 8, under which, as settled by the decisions of the English courts, and by those of the States where that statute is in force, after-acquired real estate could not pass by will.

This statute remained in force until 1849, the year after Oregon became a Territory, when the legislature adopted a statute of wills, copied from the Revised Statutes of Missouri, which provided that "every person of twenty-one years of age and upwards, of sound mind, may, by last will, devise all his estate, real and personal, saving to the widow her dower." This Missouri statute, thus adopted by the Territory of Oregon, was a revision of the Virginia statute of 1785, which, by the first section thereof, empowered every adult person of sound mind to devise by last will and testament in writing "all the estate, right, title, and interest in possession, reversion, or remainder, which he or she hath, or at the time of his or her death, shall have of, in, or to, lands, tenements," etc.; "also all goods and chattels."

When the laws of Missouri were revised in 1835, it appearing that one section of the Virginia act gave to the testator the same testamentary power over his real estate that was given him in a separate and distinct clause over his personal estate, the superfluous words were dropped, and the testamentary power over both real and personal properties were united in the one section above quoted.

The Missouri statute thus adopted by Oregon was reënacted in December, 1853, and took effect May 1, 1854, as a part of the code of the Territory. After the admission of the State

into the Union in 1859, the legislature of Oregon, in 1862 re-enacted without change the above quoted section conferring testamentary power, which has since continued to be the law of Oregon. § 3066, Hill's Code.

By an act of the legislature of Oregon, approved February 20, 1891, it has been provided that "any estate or interest in real property, acquired by any one after the making of his or her will, shall pass thereby, unless it clearly appears therefrom that such was not the intention of the testator; nor shall any conveyance or disposition of real property by any one after the making of his or her will prevent or affect the operation of such will upon any estate, or interest therein, subject to the disposal of that testator at his or her death."

The construction which the plaintiff in error seeks to have placed upon these statutes is, that the territorial statute of 1849, copied from the Missouri statute, simply conferred the power to make a will devising real estate, which, under the rules of the common law, would not operate to pass real estate acquired after the making of the will, and that such testamentary power over after-acquired real estate was first conferred by the act of 1891.

Prior to the adoption of the Missouri statute by the territorial government of Oregon, that statute had received no construction by the Supreme Court of Missouri, but subsequently, in 1856, that court was called upon, in the case of *Liggat* v. *Hart*, 23 Missouri, 127, 137, to decide whether after-acquired real estate would pass by will under the statute, where such appeared to be the intention of the testator. The court said: "The question is as to the construction of the present law. Must we hold that the act now in force does not confer testamentary power over after-acquired land, and, on account of the change in phraseology of the statute, which was made in 1835, go back to the construction put upon the original statute? We think not. The language *now used* does not require such a construction at our hands. It is different from the English statute of wills. The testamentary power is given here in general language; it embraces both real and personal estate, and is a power to make a testamen-

tary disposition of all the testator's property, without any distinction between real and personal property, and not a mere power of particular disposition. It is more in the nature of a Roman will than an English devise of real property. But, however this may be, when we consider the plan of revising that was adopted, the impolicy of creating changes in laws of daily practical importance, the little probability, when all around us were abandoning the old, narrow construction of the testamentary power, that our legislature should adopt it, for the first time, by an express provision for that purpose, and when we consider, too, that neither the community nor the profession have generally, as we believe, been aware of the supposed change, . . . we do not think that we would be warranted in declaring that the legislature, by the change in the language, intended to effect the substantial change in the meaning of the law that is supposed, and we shall accordingly give to the act, as it now stands, as literal a construction in favor of the testamentary power as we should have felt constrained to have given to the original act."

Again, in *Applegate* v. *Smith*, 31 Missouri, 166, 169 (1860), the same court said: " We consider that the case of *Liggat* v. *Hart*, 23 Missouri, 127, settles the one now under consideration. That case determines that the power over the after-acquired lands possessed by the testator is the same as that which he possessed over lands which he owned at the making of the will; that with respect to after-acquired lands, when the question arises whether they have passed by the will, it is just the same and to be determined on the same considerations as would determine the question whether lands owned by the testator at the date of his will passed by it, or, in other words, that after-acquired lands, as to the power of disposition, rest on the same ground as the lands owned by the testator at the date of his will, and the personal estate. According to this there can be no question but that the lands in Missouri passed by the will."

The construction which the Supreme Court of the State of Missouri has thus given to its statute since its first adoption thereof by Oregon does not have the same controlling effect it

would have if the decisions had been rendered before such adoption, still, they are strongly persuasive of the proper interpretation of the act, and have been so regarded by the courts of Oregon, which have clearly indicated that the statute of wills of that State should receive the same construction which has been placed thereon by the Missouri decisions. Thus in *Gerrish* v. *Gerrish*, 8 Oregon, 351, 353, decided after the Missouri cases, it was said by the court: " Our statute is an exact copy of the Missouri statute, and the courts of that State having been called upon frequently to construe it, we must look principally to the decisions of that State to ascertain its proper judicial construction."

This approval of the construction placed by the Supreme Court of Missouri upon the statute, after its adoption by the territorial government, in connection with its reënactment by the legislature of the State in 1862 — after the date of the Missouri decisions — may·be fairly considered as settling its proper interpretation by the courts of Oregon. If the same construction had been placed upon the statute by the courts of Missouri before its original adoption by the territorial government of Oregon, it is clear, upon the authorities, that that construction would have been adopted with the statute, and the same effect would seem properly to follow from an approval by the Supreme Court of the State of the construction placed upon the statute by the Supreme Court of Missouri, prior to its reënactment in 1862 by the legislature of the State of Oregon.

If the later act of 1849, copied from the Revised Statutes of Missouri, is no broader in its scope and operation than the statute of 32 Henry 8, which was embodied in the Iowa statute adopted by the provisional government of Oregon in 1844, then there would be a lack of testamentary power to dispose of after-acquired real property. This is practically what the contention of the plaintiff in error comes to. But the power of testamentary disposition conferred by the act of 1849, (copied from the Missouri statutes,) and reënacted in 1853 and 1862, as construed by the courts of Missouri and Oregon, is more comprehensive in its provisions than the act of 32 Henry 8,

confers a larger and broader power of disposition over real estate of which the testator may die seized and possessed, and extends to and includes after-acquired real estate.

In respect to the question of testamentary power of disposition over real estate, the Missouri act adopted by the territorial government, and reënacted by the State of Oregon, was unquestionably intended to be as broad and comprehensive as the Virginia act of 1785, which conferred the testamentary power to devise after-acquired land, and was more comprehensive than the prior act of 1844, taken from the Iowa statute. As already stated, the language of the statute makes no distinction between personalty and realty. It confers the power to dispose of the realty as broadly as the personalty. The saving to the widow her dower is itself indicative of an intention to make the will speak as of the date of the testator's death, at which time the widow's right of dower would come into actual possession and practical enjoyment, whether the dower right extended to all lands owned during coverture or possessed by the husband at his death.

In conformity with this construction, the Supreme Court of Oregon has held, in *Morse* v. *Macrum*, 22 Oregon, 229, that the will, as a general rule, speaks from the death of the testator, and not from its date, unless its language, by a fair construction, indicates a contrary intention; in this respect adopting the rule laid down by the Supreme Court of Connecticut in *Canfield* v. *Bostwick*, 21 Connecticut, 550; *Gold* v. *Judson*, 21 Connecticut, 616, where it is stated to be the general rule that a will speaks from the death of the testator, where there is nothing in its language to indicate a different intention.

Having reached the conclusion that the act of 1849, adopted from the State of Missouri, (and since reënacted,) as construed by the decisions of the Supreme Court of Missouri, and approved by the Supreme Court of Oregon, confers testamentary power to devise after-acquired real estate, it is not material to consider the statute of February 20, 1891, or to determine whether that statute was intended to be declaratory of the previous law, or was intended to

prescribe a rule for the construction of wills in respect to which the authorities have been and are in great conflict, many of the cases holding, as in *Smith* v. *Edrington*, 8 Cranch, 66, that even where the power exists to dispose of after-acquired real property, it would not pass unless such was the clear and manifest intention on the part of the testator; in other words, that the presumption in respect to such property was in favor of the heir at law. This rule of presumption, or construction, the Oregon statute of 1891 may have been intended to change by declaring that unless it appeared clearly from the will it was not the intention of the testator, such after-acquired real property would pass.

On this branch of the case our conclusion is that the testator (Hardenbergh) possessed the testamentary power to devise the after-acquired lands in controversy.

The remaining question is, whether by the third and last clause of his will the testator intended to dispose of all the real estate in Oregon, or elsewhere, of which he might die seized and possessed.

The cardinal rule for the construction of wills, to which all other rules must bend, as stated by Chief Justice Marshall in *Smith* v. *Bell*, 6 Pet. 68, 75, is, that "the intention of the testator expressed in his will shall prevail, provided it be consistent with the rules of law. This principle is generally asserted in the construction of every testamentary disposition. It is emphatically the *will* of the person who makes it, and is defined to be 'the legal declaration of a man's intentions, which he wills to be performed after his death.' These intentions are to be collected from his words, and ought to be carried into effect if they be consistent with law."

In *Jasper* v. *Jasper*, 17 Oregon, 590, the same rule is adopted, and in ascertaining what the intention of the testator is, the words used are to be taken according to their meaning as gathered from the construction of the whole instrument. It is furthermore settled by the authorities that when one undertakes to make a will it will be presumed that his purpose is to dispose of his entire estate. *Phelps* v. *Phelps*, 143 Mass. 570; *Pruden* v. *Pruden*, 14 Ohio St. 251; *Gilpin* v. *Williams*, 17

Ohio St. 396; *Leigh* v. *Savidge,* 14 N. J. Eq. (1 McCarter) 124 ; *Gourley* v. *Thompson,* 2 Sneed, 387 ; *Appeal of Boards of Missions,* 91 Penn. St. 507.

In the present case the devise to the testator's sister of all his right, title, and interest in and to all his lands, lots, and real estate lying and being in the State of Oregon, or elsewhere, except as to the specific devises previously made ; and also all of his personal property and estate of whatsoever kind or nature, is sufficiently comprehensive to indicate an intention to pass everything of which he might die seized and possessed, both of real and personal property. This disposition, residuary in its character, is utterly inconsistent with an intention to die intestate as to any portion of his estate, real or personal. When the words of the will of a testator will fairly carry, as in the present case, the whole estate of which he dies seized and possessed, there is no presumption of an intention to die intestate as to any part of his property. This general rule is laid down in *Given* v. *Hilton,* 95 U. S. 594, where it is further stated that "the law prefers a construction which will prevent a partial intestacy to one that will permit it, if such a construction may be reasonably given, (*Vernon* v. *Vernon,* 53 N. Y. 351,) and certainly when, as in this case, the intent to make a complete disposition of all the testator's property is manifest throughout his will, its provisions should be so construed, if they reasonably may be, as to carry into effect his general intent."

Without going into any review of the authorities, special reference may be made to the case of *Wait* v. *Belding,* 24 Pick. 129, 136, 137, which arose under a will executed in 1797, before the Revised Statutes of Massachusetts went into effect, which devised to the testator's two sons the whole of his "lands and buildings, lying and being in the town of Hatfield." By a codicil, dated May 2, 1812, he gave to the same sons lands, not enumerated in the will, purchased since then, in the town of Hatfield, or elsewhere. In construing this will, Chief Justice Shaw said: "In general, a will looks to the future; it has no operation, either on real or personal property, till the death of testator. General words, therefore, may

as well include what the testator expects to acquire, as what he then actually holds. The term, 'all my property,' may as well include all which may be his at his decease, as all which is his at the date of the will, and will be construed to be so intended, unless there are words in the description which limit and restrain it. We are then brought back to the particular description, 'the whole of my lands and buildings lying and being in the town of Hatfield.' There are certainly no words, and nothing in the will, showing an intent to limit it to the lands and buildings then held by him. No such intent can be presumed. Had it been *all my lands and buildings in Hatfield* or elsewhere in the original will, the law would have equally restrained its operation to lands then held, not because it was the intent of the testator that it should so operate, but because, assuming that it was his intent that all should pass, such intent is in contravention of the rule of law, and cannot be carried into effect.

"The court are of opinion that this general description of the whole of his lands and buildings in Hatfield is broad enough to embrace the whole estate there, whether acquired before or subsequently to the making of the will, and there is nothing in the terms or construction of the will which would warrant us in restraining it to the lands then owned. By the Revised Statutes it is provided that a will shall embrace after-acquired real estate as well as personal property, when such is the intent of the testator. These statutes do not affect this will, and I only allude to them by way of illustration. Suppose this will had been made after the Revised Statutes, and the question should be, whether the estate now in controversy passed by this devise. There seems to be no doubt that it would, the description being general of all lands in Hatfield, without limitation as to the time of acquisition. Then, if this description was sufficient to include all real estate in Hatfield, it would have passed by the original will, but for the rule of law restraining the operation of all devises to estate held by testator at the date of the devise. But when the date is brought down by the republication of the will, it takes effect upon all estate acquired between the original date and the

republication, and held by the testator at the time of the republication. Had there been a general residuary clause, for instance, such would clearly have been the effect of a republication. But the only difference is that a residuary clause embraces all estate whenever acquired; but if the description actually used is sufficiently large to embrace the estate in controversy, the result must be the same as to such estate."

These views are directly in point in the present case, where the language is just as comprehensive, and manifests just as clearly an intention of the testator to devise all his lands in the State of Oregon.

It may, therefore, be laid down as a general proposition, that where the testator makes a general devise of his real estate, especially by residuary clause, he will be considered as meaning to dispose of such property to the full extent of his capacity; and that such a devise will carry, not only the property held by him at the execution of the will, but also real estate subsequently acquired of which he may be seized and possessed at the date of his death, provided there is testamentary power to make such disposition. 1 Jarman on Wills, 326, 5th ed., and other authorities cited.

From the foregoing considerations we are of opinion that there was no error in the judgment of the court below, and the same is accordingly

*Affirmed.*