**ALASKA AIRLINES, Third-Party Plaintiff,**

v.

**UNITED STATES of America, Third-Party Defendant.**

**James J. FLOOD, as Administrator of the Estate of James W. Flood, Deceased, Plaintiff,**

v.

**ALASKA AIRLINES, Defendant.**

**James J. FLOOD, as Administrator of the Estate of James W. Flood, Deceased, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Walter MORRIS, Administrator of the Estate of Alvin Joe Morris, Deceased, Plaintiff,**

v.

**ALASKA AIRLINES, Defendant.**

**MDL No. 107, Nos. C–71–1729–PMH, C–71–1730–PMH, C–73–0037–PMH, C–74–0115–PMH, C–74–0642–PMH, C–73–2292–PMH.**

United States District Court, N. D. California.

June 16, 1975.

On Motion to Reconsider July 29, 1975.

Donald W. Madole, Washington, D. C., Chairman, James B. Bradley, Juneau, Alaska, Vernon T. Judkins, Richard F. Krutch, Seattle, Wash., Discovery Committee Atkinson, Conway, Young, Bell & Gagnon, Inc. by Joseph L. Young, Richard L. Richmond, Anchorage, Alaska, M. Ashley Dickerson, Inc. by M. Ashley Dickerson, Anchorage, Alaska, Ely, Guess & Rudd by Frances E. Smith, Jr., David H. Bundy, Anchorage, Alaska, Kay, Miller, Libbey, Kelly, Christie & Fuld by Lester W. Miller, Jr., Anchorage, Alaska, Kennelly & Azar by C. R. Kennelly, William G. Azar, Anchorage, Alaska, Krutch, Lindell, Donnelly, Dempcy, Lageschulte & Judkins, P.S. by Richard F. Krutch, Vernon T. Judkins, Seattle,

Wash., Magana & Cathcart by James J. McCarthy, Los Angeles, Cal., Robertson, Monagle, Eastaugh & Bradley by James B. Bradley, Juneau, Alaska, Speiser, Krause & Madole by Donald W. Madole, Washington, D. C.

Lord, Bissell & Brook by William P. Butler, Alvin E. Domash, Terry W. Backus, Chicago, Ill., Hagans, Smith & Brown by Charles W. Hagans, Anchorage, Alaska, Engstrom & Lipscomb by Paul W. Engstrom, Los Angeles, Cal., for Alaska Airlines.

Perkins, Coie, Stone, Olsen & Williams by Keith Gerrard, Seattle, Wash., for Boeing Co.

Brill, Hunt, DeBuys & Burby by Robert D. Brill, David C. Haber, Los Angeles, Cal., for Fireman's Fund Ins. Co.

George M. Fleming, Aviation Unit, Tort Section, Civ. Div., Dept. of Justice, John Harrison, Asst. Chief Counsel, Litigation Div., Federal Aviation Administration, Washington, D. C., for the United States.

PEIRSON M. HALL, District Judge.

While this matter involves a mere order for change of venue, which is ordinarily a simple matter, the complexity of the litigation involved in MDL 107 requires a brief statement.

Discovery proceeded diligently by committee appointed by the court. To show the extent of discovery, the committee expended or advanced from their own funds approximately one hundred thousand dollars in costs and traveled several hundred thousands of miles. From time to time this court has held hearings in connection with various phases of the litigation in Albany, New York, where this judge was sitting by assignment, in Los Angeles, and, of course, in San Francisco.

The net result is that settlements have been made by Alaska Airlines, making payments under court-approved order in each case, to all of the claimants in all of the death cases except for the one filed for Alvin Joe Morris (Case No. N–4–73 of the United States District Court of Alaska, now No. C–73–2292–PMH of the above-entitled court) and the two cases filed on behalf of the claimants for the death of James W. Flood, above set forth [one against Alaska Airlines, Collins Radio and Jeppesen Company (Case No. A–143–73 of the United States District Court of Alaska, now No. C–74–0115–PMH of the above-entitled court), and one against the United States of America Case No. A–74–9 of the United States District Court of Alaska, now No. C–74–0642–PMH of the above-entitled court].

As above indicated, all of the settlement payments were made by Alaska Airlines, which, under the law of Alaska, in order for it to be entitled to sue for contribution and indemnity, A.S. §§ 09.16.010–09.16.040 (Alaska Uniform Contribution Among Tortfeasors Act), as it has in each third-party complaint, had to secure the release of the possible joint tortfeasors from the plaintiffs. This was done in each case, including, of course, a release of the United States of America, which, as indicated, is the only party still a third-party defendant in Alaska Airlines' third-party complaint for hull damage, contribution, and indemnity for payments made in settlement of death claims.

Thus, the only things remaining to be tried in this case are the cases on behalf of passengers Flood and Morris and the third-party complaints by Alaska Airlines against the United States.

28 U.S.C. § 1404 contains the governing statute. It provides, in subdivision (a): "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

On September 4, 1971, the crash of Alaska Airlines Flight No. 1866 near Juneau, Alaska, resulted in the death of all 111 persons aboard said plane, including the crew.

On September 8, 1971, Patricia Hartland filed a suit for the wrongful death

of Sherman Hartland, Jr., in the United States District Court in San Francisco, under Case No. C–71–1729. On the same day, Juanita Hartland filed a suit for the wrongful death of Sherman Hartland, Sr., in San Francisco, and it received Case No. C–71–1730. Within a very short time several other suits were started in San Francisco for the wrongful death of various passengers arising out of the same air crash. All such cases were duly and regularly transferred by the Northern District of California in San Francisco, for all purposes, to the undersigned judge, sitting by general designation in the Northern District of California under 28 U.S.C. § 292(b).

On September 1, 1972, Patricia Hartland, on behalf of the heirs of decedent Sherman Hartland, Jr., filed Case No. C–37984 against Alaska Airlines and the Boeing Company in the Superior Court of Los Angeles County. It was first regularly removed to the Central District of California by the Boeing Company, and thereafter was removed by a separate petition by Alaska Airlines to the Central District of California, which resulted in two case numbers in the Central District of California, namely, 72–2386 and 72–2602; and was later transferred to the Northern District of California, receiving Case No. C–73–0037–PMH.

A hearing before the Judicial Panel on Multidistrict Litigation for transfer under 28 U.S.C. § 1407 resulted in an order that, effective November 15, 1972, all the above cases and all other cases arising out of said crash then pending, as well as so-called tag-along cases in other districts in the United States than the Northern District of California, would be transferred to the Northern District of California and to the undersigned judge under MDL Docket No. 107 (350 F.Supp. 1163). Thirty-two cases filed in districts other than the Northern District of California were ultimately transferred under MDL 107; and those cases, together with the cases filed in San Francisco, totaled 67, with about 150 claimants.

The cases named as defendants, variously, Alaska Airlines, Collins Radio, Jeppesen Company, Hughes Airwest, the United States of America, Standard Kollsman Industries, and Kollsman Instrument Corp.

In each of the cases, a third-party complaint, or crossclaim (sometimes so designated), was filed by Alaska Airlines against the United States and, at one time or another, against various other parties, all of which other parties have since been dismissed, so that the third-party complaints by Alaska Airlines now pend only against the United States, to be tried with the two complaints for the two decedents above named, Flood and Morris.

All of the cases filed arising from this accident ultimately reached the Northern District of California and have been consolidated under MDL 107, and have otherwise been consolidated on the question of liability. They were all transferred to the above court for all purposes some time ago; and the parties are now in the course of preparation of a Pretrial Order, preparatory to a possible trial date during the summer or early fall. In the event the cases are decided in favor of the two decedents, a decision will then have to be made on whether to remand the question of damages to their districts of origin. Such will not be necessary as to the third-party suits, as the district of origin was the Central District of California in the Patricia Hartland case.

It is immaterial and of no consequence that Case No. 71–1730–PMH was designated as the lead case. All the cases were consolidated with each other; and Case No. 71–1729–PMH, that of Patricia Hartland, was, in fact, the first case filed and should have been the lead case instead of that of Juanita Hartland, Case No. 71–1730–PMH. It is also immaterial because all proceedings have been conducted under the consolidated MDL Docket No. 107, except those questions which involved only individual cases.

■ The first question to be decided in connection with whether or not the cases can be transferred so that venue lies in the United States District Court for the Central District of California is whether or not the cases "could have been brought" in the Central District of California.

In that connection, the court is of the conclusion that the Patricia Hartland case in which the third-party complaint against the United States is filed not only *could have been brought*, but *was brought*, in the Superior Court of the County of Los Angeles; that it was properly and regularly removed to the United States District Court for the Central District of California; and that all the other cases were properly and regularly consolidated with it, and it with them.

■ The next matter to be considered in connection with the change of venue under 28 U.S.C. § 1404(a) is the "convenience" of the parties and witnesses and "the interest of justice." The witnesses deposed by the various parties through the discovery proceedings have been in Alaska, the State of Washington, the State of Iowa, the State of Texas, the State of California, and Washington, D. C. Thus, there is actually no place that would really be more for the convenience of all or even a majority of the witnesses than any other place. No matter where the third-party complaints are ultimately tried, it will inconvenience the witnesses to attend unless their testimony is given by deposition.

As far as convenience of the parties is concerned, Alaska Airlines has indicated that it not only waives, but consents to the transfer of the venue of this case from the Northern District of California, the District of Alaska, and the District of Washington to the Central District of California.

The United States has not indicated an affirmative stand on the subject. Section 1406 of Title 28 of the United States Code provides for the curing or waiver of any defects in connection with venue. 28 U.S.C. § 1406(b) provides as follows: "Nothing in this chapter shall impair the jurisdiction of a district court of any matter involving a party who does not interpose timely and sufficient objection to the venue."

There have been a great many pleadings and appearances filed wherein the United States could have interposed an objection to change of venue from either Seattle, Washington, or Anchorage, Alaska. In not one of them has the United States interposed any objection to the venue of San Francisco. The United States has entered into stipulations and made many appearances, in none of which has there been an interposition of any objection to venue or claim that venue properly lay in Alaska, Washington, or the Central District of California.

■■ While the statute does not say that failure to interpose such objection constitutes a "waiver," nevertheless, the Code heading refers to "waiver." A waiver is different than a consent. A waiver, as defined by Webster as well as Black's Law Dictionary and others, constitutes an *abandonment* of a right, with no reservations for future use, which is a unilateral thing. *Panoualias v. National Equipment Co.*, 269 F. 630 (2nd Cir. 1920). A consent, on the other hand, is not unilateral but requires two parties, the one giving the consent and the one to whom the consent is given.

Moreover, some of the cases were filed in Alaska, some in San Francisco, some in Washington, and one in the Southern District of California. So, there are four districts where some of the suits, including the third-party claims, could have been brought.

At the last several hearings, where the court indicated a desire to remove these cases to Los Angeles for all remaining proceedings and the trial of the third-party complaints, counsel for the Government indicated a desire to go to Seattle for the convenience of witnesses; but, as before indicated, one place is as inconvenient as another for all. Search as I might, I can find no inconvenience

to the United States for the cases to be tried in Los Angeles.

■ Thus, it comes down to the "interest of justice." It is clear that the United States has waived its right to have the cases tried in San Francisco and in Seattle and in Anchorage by its failure to object on any of its appearances. *Hoiness v. United States*, 335 U. S. 297, 69 S.Ct. 70, 93 L.Ed. 16 (1948).

The Ninth Circuit has a broad point of view of the things to be taken into consideration on change of venue. In a recent opinion, in *Paper Operations Consultants International, Ltd., etc. v. SS Hong Kong Amber, etc., et al.*, 513 F.2d 667 (9 Cir. 1975), the court pointed out that the ultimate question to be decided in determining venue is whether " 'the forum chosen by the plaintiff is so completely inappropriate and inconvenient that it is better to stop the litigation in the place where brought and let it start all over again somewhere else.' " (P. 670)

■ Certainly that cannot and should not be done in this case, as it would be the rankest injustice to do so, especially where the third-party plaintiff has expended in the neighborhood of thirteen million dollars in settling claims of plaintiffs and securing releases of the United States, and the Plaintiffs' Discovery Committee has expended close to one hundred thousand dollars in discovery.

Moreover, the Ninth Circuit adopted the view expressed in *Hoffman v. Goberman*, 420 F.2d 423, 426–7 (3rd Cir. 1970), that:

"[t]here must be a clear showing of facts which either (1) establish such oppression and vexation of a defendant as to be out of all proportion to the plaintiff's convenience, which may be shown to be slight or nonexistent, or (2) make trial in the chosen forum inappropriate because of considerations affecting the court's own administrative and legal problems." (P. 670)

*See also, Pfizer, Inc. v. Lord*, 447 F.2d 122, 125 (2nd Cir. 1971). It is impossible to see how any "oppression or vexation" of the United States can occur by trial in Los Angeles.

The Ninth Circuit, in the *Paper Operations* case, referred to the statement in the Supreme Court case *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–509, 67 S. Ct. 839, 91 L.Ed. 1055 (1947), wherein it listed numerous factors which may be considered in venue, one of them being the administrative difficulties for the courts. (P. 671)

■ In this instance, an administrative difficulty arises which is unusual in that it is not connected particularly with congestion, usually referred to in one or another of the districts where the suits "might have been brought." The difficulties arise from the fact that the Judicial Panel on Multidistrict Litigation has transferred to the Central District of California and assigned to this judge all of the multidistrict litigation cases (103 cases) arising out of the Pago Pago air crash of January 30, 1974, in which just less than 100 people were killed; and all of the cases arising out of the Paris air crash of March 3, 1974, where 346 people were killed. In the latter case, there are 200 cases, most of them filed in the Central District of California, involving 322 decedents and in which the questions are exceedingly complex and multitudinous. In fact, there is hardly a day goes by but what some one matter or another of pressing importance is not presented to the court for its consideration and determination in one or the other of those crashes.

The long and short of it is that it would simply be impossible for this judge, or any other judge for that matter, to sit in trial on the third-party complaints of Alaska Airlines against the United States, which I estimate will last from six weeks to two months or more, in any place other than Los Angeles and at the same time service the matters which arise in the Paris crash

case (MDL No. 172) or in the Pago Pago crash case (MDL No. 176).

▮▮ The settlement of all the cases (including C–71–1730, the lead case), except the *Flood* and *Morris* cases pending here, does not affect the court's jurisdiction over the third-party claims. *Dery v. Wyer*, 265 F.2d 804, 808 (2nd Cir. 1959). Where the jurisdictional requirements have been met when the action is filed, subsequent events do not work an ouster of jurisdiction. *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845 (1938); *Hardenbergh v. Ray*, 151 U.S. 112, 14 S.Ct. 305, 38 L.Ed. 93 (1894); *Mullen v. Torrance*, 22 U.S. (9 Wheat) 537, 6 L.Ed. 154 (1824).

Mention has been made of the waiver by the United States to its right to venue in other districts. In addition to what has been said, the court calls attention to the discussion with all counsel at the pretrial conference between May 12, 1975, and May 22, 1975, where the court mentioned many times that it intended to transfer the cases to the Central District of California. Government counsel asked the court to give him until June 2, 1975, to file any memorandum of objection. He has filed none, and that of itself is a complete waiver under 28 U.S.C. § 1406(b).

The court can reach no other conclusion but that:

It is hereby ordered that all of the cases arising out of the Alaska air crash of September 4, 1971, and now pending in the Northern District of California under MDL No. 107 be, and they hereby are, transferred to the Central District of California.

It is further ordered that the Clerk of the Northern District of California transmit all of the files, exhibits, and records in said cases to the Clerk of the Central District of California forthwith.

Lest there be any question about it, the matter of liability in the *Flood* cases and the *Morris* case are consolidated with the *Particia Hartland* cases and all other cases, and the third-party complaints will be tried at the same time. The court is not overlooking a motion for remand made in connection with the *Morris* case alleging a default, but that can be separately handled after the transfer of the cases to the Central District of California is complete.

## ON MOTION TO RECONSIDER

This is brought on for further hearing of the United States' motion to reconsider the Court's order transferring the cases to the Central District of California pursuant to 28 U.S.C. § 1404.

First, no pleading or any document before this Court sitting in San Francisco or Los Angeles at any time shows any desire by the United States for Alaska or Seattle as the place of proper venue until the motion that was filed on July 18, 1975.

The proceedings were begun in San Francisco on September 8th, 1971. So that is in the space of 4 years.

The claim in the affidavits supporting the motion that this court had knowledge of the affidavits filed by the Government in the Multidistrict Litigation Panel is not true, as we get no copy of any record issued by the Multidistrict Panel, and the only thing received by this court is a copy of the memorandum decision wherein they do not recite the testimony, 350 Fed.Supp. 1163 (1972).

It states at page 1164:

"The only dispute concerns the selection of the transferee district. The United States requests transfer to Alaska because the crash occurred there and electronic equipment and personnel involved in the events surrounding the crash are there. Every other party to the litigation, plaintiff and defendant, prefers transfer to the Northern District of California.

"In opposing transfer to Alaska, they note that there are no eyewitnesses to the crash and that all witnesses likely to be called are the agents and employees of the defend-

ants and have already submitted to some examination by the plaintiffs or by the National Transportation Safety Board outside of Alaska. In support of the Northern District of California, they refer to the progress made in that district in securing the stipulation and in commencing consolidated discovery.

"Although the fact of Judge Hall's intracircuit assignment to all districts makes the choice of transferee district less significant, we think the parties should be allowed to continue in the district in which they have accomplished all of their discovery. The considerations argued by the United States in favor of Alaska have been effectively rebutted by the other parties and the past history of the litigation clearly requires that all cases be transferred to the Northern District of California."

The above is cited only to remind counsel that the court did not have before it any of the affidavits which were attached to the moving party's papers before the panel and which were suggested were available to the court and that it had knowledge thereof.

There is a case squarely in point, *Dery v. Wyer*, 2 Cir., 265 F.2d 804, wherein there was raised the question of jurisdiction of the Court of the third-party complaint where the main action had been settled, just as all of the passenger and human occupant cases have been herein except for the Flood case. There, the Court said, at page 808:

"We also hold that the ancillary jurisdiction over the third-party complaint was not lost when the main cause of action was settled. Generally, in a diversity action, if jurisdictional prerequisites are satisfied when the suit is begun, subsequent events will not work an ouster of jurisdiction."

The Court went on to cite *Mullen v. Torrance*, 9 Wheat (22 U.S.) 537, 6 L. Ed. 154; *St. Paul Mercury Indemnity Company v. Red Cab Co.*, 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845 and *Hardenbergh v. Ray*, 151 U.S. 112, 14 S.Ct. 305, 38 L.Ed. 93.

"This result is not attributable to any specific statute or to any language in the statutes which confer jurisdiction. It stems rather from the general notion that the sufficiency of jurisdiction should be determined once and for all at the threshold and if found to be present then should continue until final disposition of the action."

The motion to reconsider is puzzling. It was entitled, "Motion to Reconsider," but in the prayer it asks that it either be reconsidered and vacated, or that the cases be transferred either to Anchorage or to the State of Washington.

The court is not sure that it refers to Anchorage. It would have to be referred to the District of Alaska. There is one district in Alaska, but the statute —28 U.S.C. § 81A—provides for five places of holding court: Anchorage, Fairbanks, Juneau, Ketchikan and Nome.

Under Section 1404(b) of Title 28, upon motion, consent, or stipulation of the parties in an action, suit or proceeding of a civil nature or any motion or hearing thereof, may be transferred in the discretion of the Court from the district in which it is pending to any other division in the same district, and so on, and so forth.

It is in the discretion of the Court to transfer it back to the District of Alaska—whether or not we would transfer it to Nome or Fairbanks or Anchorage.

In *Gulf Oil Corp. v. Gibbert*, 330 U.S. 501 at page 503, 67 S.Ct. 839 at page 843, 91 L.Ed. 1055, the elements to be taken into consideration in considering a motion for a change of venue were set out in an opinion by Mr. Justice Jackson:

"If the combination and weight of factors requisite to given results are difficult to forecast or state, those to be considered are not difficult to name. An interest to be considered,

and the one likely to be most pressed, is the private interest of the litigant. Important considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive."

The Court has taken all of those matters into consideration when it made its order which was filed June 16th for the transfer of the cases from San Francisco to Los Angeles.

The court wishes to again emphasize, having lived with this case for four years since its inception and being probably more familiar with it than any other judge, and having thought a great deal about where the case should be tried, the court does not find that any place is any more convenient than any other place.

As heretofore indicated, the depositions were taken in Anchorage where witnesses live. They were taken in Seattle where witnesses live. They were taken in Iowa where witnesses live. They were taken in Texas where witnesses live. They were taken in Toronto. They were taken in San Francisco, and in Washington, D.C. It would challenge anybody's appraisal of the intelligence of a judge who has sat with this case as long as this court has to think that there would not be witnesses from Collins Radio, who is headquartered in Iowa.

It is not known whether plaintiffs have taken all of the depositions they want from Collins Radio or not, but if they want live testimony—if the plaintiffs here want live testimony of Collins Radio they are going to have to bring them from Iowa.

So it is with the Government, no matter where you go you are going to find that no place is convenient for all of the parties to this lawsuit.

It comes down to the proposition of whether or not we are going to bend to the claimed convenience of the Government. This case, as one of the counsel indicated, is ultimately winding up as a case concerning technicalities and experts.

It is doubted that any lay witness—no matter how many people live in Anchorage, Alaska or saw these people drinking a clear fluid in a glass the night before the accident—the parties may produce, that that would turn the outcome of this case. It may be that it would.

If you have the autopsy report you do not need a live witness to testify that a man has alcohol in his blood.

Another reason advanced by the United States for having the trial either in Seattle or in Anchorage, other than having it here, is that if we have it here they would have to replace personnel and it would cost them money.

Now, if you have it in Seattle, Washington, you are going to have to replace the personnel that you have in Anchorage in order to bring them down to Seattle, Washington.

If you have it in Anchorage, you are going to have to replace the personnel in Seattle, and Mr. Harrison said in one of these statements on the pretrial that a lot of the Government witnesses lived in Seattle.

If you have it in Anchorage you are going to have to haul all of those witnesses up to Anchorage for live testimony.

The argument that it is going to cost money to hire somebody to replace them in their absence has no validity beceause no matter where you try it—whether at Seattle or Anchorage—the Government would have to hire somebody to replace its live witnesses whom they desire to take as their employees.

Counsel made no discussion whatsoever of the Court's convenience. That matter has been touched upon in the court's earlier opinion and the cases cited there.

The Government urges that this Court lacks jurisdiction because none of the cases could have been brought in this district. Four cases were actually brought here, either in the State court and removed to this court, or they were originally brought in the United States District Court.

No motion to dismiss them was filed whatsoever. It was held early in the proceedings that Alaska Airlines was doing business in California so as to give jurisdiction of all of the cases, and the holding was made in an additional four cases that Alaska Airlines was doing business in California through TCI, the bureau or the company named in the affidavit of one of the Alaska Airlines employees, who also stated that two Alaska employees were continuously employed both here and in San Francisco by that company.

There is no question concerning jurisdiction of this district and this court to try the cases with which all of the other cases are consolidated, which were originally filed in the State court or in this court, and service was made by Alaska Airlines.

These cases were transferred to this district not under 1407, but under 1404 (a).

Sec. 1404(b) encompasses all motions to transfer on change of venue. 1404 (b) provides upon motion, consent or stipulation of all parties in any action, suit or proceeding of a civil nature, or any motion or hearing thereof may be transferred in the discretion of the Court from the division in which it is pending to any other division of the same district, and transfer of proceedings in rem brought on by or on behalf of the United States may be transferred under this section. Without the consent of the United States this is not a transfer in rem.

■ The Court has jurisdiction and has rightfully decided that either under 1404(a) or 1406(b) the transfer for the purpose of venue is valid.

All of the third-party complaints filed in these proceedings were entitled and filed in the United States District Court for the Northern District of California as well as all of the answers which the Government has seen fit to file to date which were likewise entitled in the United States District Court for the Northern District of California.

No objection was made by the United States in any of those pleadings to venue. No request was made at the time any of those pleadings were filed for transfer of this case of venue to Anchorage or Seattle. There is no answer by the United States to the Alaska amended complaint and those are long overdue.

As the matter stands now, according to the records of this Court, the third-party plaintiffs would be entitled to request a motion for default, but the Court thinks it could and would be corrected, as the Court is reluctant to ever grant any motions for default, especially in a matter as important and involving the sums that are involved here. It will be corrected by Mr. Harrison's filing an answer and the stipulation by my amendment of the pretrial order.

Let's come, for a moment, to the Flood case. We have been talking mostly about the third-party complaint. Flood here is representative of one of 111 of those who lost their lives. All of the rest have been settled.

He is entitled to have his case tried without any further delay and without being shoved around all over the country. He has consented to try the case with the venue of this district, and he has consented to waive a jury.

When the case was set for trial on August 5th there was no objection made by the United States. Section 1406(b) requires timely and sufficient objection. Certainly, the document coming in on July the 18th, 1975, after the cases which were commenced on September 8, 1971 had been pending 4 years was not a timely objection to venue. It is true that these cases were pending in San Francisco, but, as point-

ed out in the Court's prior memorandum, sec. 1406(b) refers to a waiver, and the definition of a waiver is an abandonment of a person's right.

When a person waives a right he abandons that right. And in this case it is a right to have a case tried within a certain district and if they waive it and let it go to another one they have thereby abandoned any right that they may ever have had to have had the case transferred to a certain district for trial.

Another reason for the Court's conclusion is because all of the other parties besides the United States are prepared for trial. In preparing for a trial in a case like this it is not the simple thing of giving a lawyer notice at his office in Los Angeles a week before the trial and having him get his witnesses, because here counsel are from distant points. The Plaintiffs' Committee counsel who is going to try the case for Flood, Alaska Airlines counsel and Government counsel have to come from distant points.

They have to arrange their time. They are all busy lawyers. If they cannot do this during a stated period, they will have disrupted their entire schedule and their entire practice. And it should not be disrupted and is a miscarriage of justice for the trial not to proceed if, within a week before the trial date the Government moves for change of trial date.

 There is another consideration that is overlooked in many of these cases and that is the Court's time and the physical facilities. This is the only room that the Court has had available since we held court upstairs on the fifth floor in that churn where we had window air conditioners blowing out of each one, and the Court couldn't hear people at the lectern and the lawyers couldn't hear their witnesses who were on the witness stand.

This courtroom is not large enough to accommodate counsel, nor is it large enough to accommodate the files and records because. It is the Court's intention when this case is tried to have in the courtroom all of the files, the exhibits, and all of the depositions available to counsel and to the clerk and to anybody who wants to have access to them during the trial so as to save time. These records etc. fill 7 filing cabinets.

It is also intended to have present in the courtroom at least three 4-drawer cabinets, each of which will be assigned, one to the plaintiff Flood; one to the third-party plaintiffs, and one to the third-party defendant so that the parties can keep their files and records here without lugging them back and forth at every session, all of which will give more convenience than is available in this room.

Moreover, there is a physical matter to be taken into consideration which is seldom done. This room has exceedingly poor ventilation and air conditioning and, although the Court has survived and will tomorrow have survived up to its 81st birthday—30 some odd years of that in this building—it is extremely hard on the health of the people who must concentrate, as lawyers must in the trial of cases, to sit in this room for the four to six hours that will take in the trial of the case each day.

The Court has arranged for use of Judge Curtis' courtroom, because he will be absent on vacation, which is a new courtroom, is amply ventilated, and is large enough to accommodate not only the filing cabinets mentioned, but also the equipment which counsel may find convenient to use—you simply lay a paper under a light and it will project the image on a screen on the wall enlarged.

The United States bases one of its principal arguments on the fact that it wants live witnesses. Every witness listed has been deposed except two in one or the other of the places which we have heretofore named. The parties expect to adduce by live testimony expert witnesses available for examination and cross-examination.

There are no eyewitnesses to the crash and the Court does not know what

value any eyewitnesses could add, nor has the United States taken the trouble to set forth a summary—even a brief summary—of what an eyewitness would testify to, except Mr. Fleming's statement yesterday in court that a witness would testify that one of the crew had a glass of clear fluid in their hands the night before.

The Court cannot see how it would make any difference in the trial of this case if they were presented live except to prolong the trial, perhaps.

All of the depositions that have been taken are available to either party under the rules for any purpose.

The Government was present at all of the depositions, but refrained from examining its own witnesses on account of what was referred to as "strategy."

Whether the strategy was to hold these witnesses for the purpose of presenting their live testimony or for the purpose of not examining them in order that they may, when the case was set for trial, come in and ask for additional time so that they could depose them, the strategy has led them into a quagmire because the purposes of discovery proceedings in the new rules, and one of the purposes of 28 U.S.C. § 1407 was to eliminate what has sometimes been referred to as "gamesmanship" in the trial of lawsuits and to give everybody an opportunity to know in advance what the witnesses or observers of any scene or transaction might testify to if they were called.

By refraining from asking any questions, the other side has been prevented from finding out whether or not the United States had something, "up its sleeve," which they expected to either produce later or to use for the purpose of seeking a continuance or for any other strategic purpose such as objecting to the change of venue.

For a party to stand by at any deposition of his own witness and ask no questions, but then urge the trial be changed or transferred to that witness' residence so that he could give his live testimony, is to hold back testimony until the trial —contrary to the rules—to flout the purposes of discovery and is to be severely condemned.

The Court will repeat a section or a portion of the opinion of Justice Jackson from the Gulf case which may operate as well one way as another:

"But unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed."

Alaska Airlines, in their third-party complaints, chose the forum of San Francisco and they had the right to do so. They could have filed an original action here for contribution or indemnity; thus the case "could have been brought here" and hence the venue moved to the Central District of California.

The objections that have been made by the United States which have been considered so far and the remaining ones are insufficient.

The statute 28 U.S.C. § 1406(b) uses the words "timely" and "sufficient." The objections are insufficient to cause this Court to exercise its discretion and vacate the transfer heretofore made from San Francisco to Los Angeles or to make an order transferring venue to Alaska or to Washington.

The motion also is not "timely" in that it is made almost four years after the case was started and many months after the Court first noted, and stated in January of this year or December of last year that it intended and expected to remove the case to Los Angeles.

Moreover, the Government had an opportunity at all of the extensive discovery proceedings and other proceedings which have been taken and had in this matter to note an objection to venue, but it never objected to the venue of San Francisco and, more importantly, it did not indicate that it desired the venue of the case to be Alaska or Washington.

The Court concludes that the motion of the Government was made purely for delay, if not for harassment of the defendants. Yesterday they said that they

were ready for trial, but asked for a two-week delay, and this is not the first time in this case that the Government has caused delay, expense and inconvenience to the defendants.

So the Government has, since the beginning of this case somehow or another, been able to convey the impression that they wished that it would go away somehow, to put it mildly.

The Commercial Solvents case cited by the Government in its brief, the Southern District of New York in 1974, 371 F.Supp. 347 (D.C.N.Y.), held that the convenience of the witnesses involved in that case were sufficient to either grant or deny the change of venue because they were crucial witnesses. There is nothing here in any of the affidavits that are made to show that any crucial witness has not either been deposed or is not available for direct oral testimony.

That being the case, the motion of the Government to vacate the order of this Court filed on June 16, 1975, transferring venue of the case to Los Angeles, is denied.

The Court will proceed with the trial as set on August 5th.